Nott J.
The court concur in opinion with the recorder in this case. The cases in which the question has been discussed, are so familiar to the profession, that it cannot now .be necessary to go into a very nice analysis of them. The whole doctrine will be found in the three cases of Walton vs. ‘Shelly, (1st. Dunford. & E. 296.) Bent vs. Baker, (3 D. & East. 27.) and Jordaine vs. JLashbrooke, (Qih D. & E. 601.) In the first it is laid down that “no party who has signed a paper or deed, shall ever be permitted to give testimony Ito invalidate that instrument which he has so signed.” It is necessary hereto attend to the words of the learned judge who presided in the kings bench, when this opinion was delivered: He shall not be permitted to invalidate any “paper or deed.” But in the case of Bent & Baker, which occurred about two years afterwards, the same judges, with the exception of Lord Mansfield, who had left the bench in the mean time, apparent” ly dissatisfied with that decisbn, endeavored to modify the .rule by restricting it to negotiable instruments.. That was not a case, however, arising on a negotiable instrument, and cannot, therefore be considered as deciding any thing, but, that the law was incorrectly laid down in the case of Walton & Shelly; and reserved the question as to the correctness of the rule, in relation to negotiable paper. The law remained in that unsettled state until the case oí Jordaine & Lashbrooke, when' the court declared, after great consideration, that the whole doctrine was founded on mistaken principles, and that the objection ought to go to the credibility of the witness and not to his competency, and Lord Kenyon, in that case denies, ■ that he even made rise of tiie expression imputed to him in the case of Bent & Baker, recognizing the rule as applicable even to negotiable instruments; and although there may be found some conflicting decisions among the nisi prius cases since that time, the courts have all ultimately adopted the *74 principle of the case of Jordaine fyLashbroolce, and the question is now as well settled in England, as any that has ever been discussed in their courts. A diversity of opinion has been entertained in the American courts on the subject. The rule as laid down in the case of Walton & Shelly, has been adopted by some of them. In others, it has undergone various modifications. I think the'rule, most generally adopted, is, that a party may be permitted to give testimony to impeach his own deed or paper, not negotiable; and to give evidence, even in an action on a negotiable instrument, to any fact which occurred after its creation, which may go to its destruction, but not to impeach it, as it is expressed, in its original concoction. Let us then examine the grounds of these distinctions, and if it shall be found that no such distinction is authorized by the general rules of evidence, I think the conclusion will follow that the rule itself cannot be supported. The civil law maxim, quoted by Lord Mansfield, in the case of Walton and Shelly, nemo allegans suam turpiiudinem est audiendus, seems to be the best text from which the whole doctrine is derived. Now,if the ground of incompetence be, that a party to a fraud shall not be permitted to publish his own shame, then it must apply as well to deeds and all other papers as to negotiable instruments. He must be as incompetent in one case as the other. His competency cannot depend upon the nature of the case in which he is called to testify. It is as dishonest to give currency to a bond which is founded on a base consideration, as to a negotiable note; and the party who is called upon to prove the fact is equally the herald of his own shame in both. It is as fraudulent to put into circulation a negotiable note, after it has become due and been paid off as one which was void in its original creation. The rule, therefore, must be admitted to the whole extent to which it was laid down in the case oí Walton 8s Shelly,' or it must be exploded altogether; and it is admitted by all. the modem adjudications to be applicable only to cases arising on negotiable instruments. If it be founded on pub» *75 lie policy, then it is no longer a rule of evidence, but goes to the nature of the defence; .and the testimony ought not to be admitted, even though the fact could be established by a witness who was no party to the transaction. If, therefore, wo intend to have our decisions governed by any fixed rules of evidence, we must suffer the objection to go to the credibility only, and not the competency. And, indeed, upon examining our decisions, it will be found that such has been the rule by which the courts of this state have always been go\~ erned. The case of Cantey & Sumter (2nd May 93.) would appear at first view to lead to a different conclusion. But upon examination, it will be seen that the question could not have arisen in that case. Cantey was the plaintiff in the action, and therefore, could not have ■ been a witness for any purpose; And although in the course of the argument it was urged that he could not be a witness to impeach his own deed, it does not appear that that was the ground of his rejection; neither could it be, since his being a party on the record was an irresistible objection to his admission. The argument of the counsel has been received as furnishing the ground of decision and the case has heen pressed upon us as deciding a principle which it does not embrace. Besides, that was an action on a bond to which the rule does not apply. Again, he was not called to invalidate the instrument itself, but to prove payment afterwards, which all the advocates of the rule now admit is allowable, even in actions on negotiable instruments. I take it, therefore, that the decision went on the broad ground, that as he was the plaintiff in the action he could not be a witness; without deciding any other point: And I am the more disposed to come to that conclusion, because I find in the same volume, p. 23. that in the case of Payne, Indorsee, vs. Trezevant, the indorser of a note was admitted to prove that it was given on an usurious consideration, In the case of Smith vs. M’Dow, (1 Constitutional Reports, 277,) and Haig vs. Newton, (1 Const. Reports, 423,) the question was fully argued. In the first, the question *76 was, whether the indorser of a note might be permitted to-prove, that it was indorsed after it fell due, in order to let in the drawer to a defence which would go to defeat the action. The court held, that the witness ought to have been admitted.. In the latter the drawer was rejected, not on the ground that he might not be permitted to invalidate his own-note, but on the ground of a supposed interest which he had in the eventof the cause In the case of Motte & Dorrell, (1 M' Cord's Reports, 350,) which was an action against the indorser, the drawer was admitted by Judge Bay, as a good common law witness to shew that the note and the endorsement were both usurious; and the decision was supported by a large majority of the constitutional court. The same question also was decided in the cases of Thomas vs. Brown, (1 M'Cord, 557,) Flemming and Mulligan, (2 M’Cord, 173,) Brummer et ux, ads. Wilks, (Do. 178.) In the case of Snellgrove vs. Martin & Patrick, (2 M'Cord, 241,) it was held that even the declarations of the payee of a note, made before it had been negotiated, might be given in evidence to defeat an action brought by the indorser against the- drawer. Judge Colcock dissented, only because the payee, was a competent witness and ought to have been sworn, (b.) If, therefore we intend to be consistent v, ith oúrselves, we are bound to support the decision of the recorder. It may be further observed, that previous to the case of Jordaine and Lashbrooke, the rules of evidence were very unsettled in England. The line of distinction between competency and credibility had not by any means been distinctly drawn. Lord Mansfield observed, in the case of Walton vs Shelly, that the old cases upon the competency of witnesses had gone upon very subtle grounds. Judge Bidler in the same case observes, “as tq the question of interest, it is much to be lamented that there *77 is such confusion in the cases.” In thecaseofNefti Si Baker, Judge Jlshhurst says “there is such a contradiction in the do-cisions respecting the boundaries of evidence, that I choose-•rather to give ray opinion on the particular circumstances o£ the case, than to lay down any general rule on the subject.V Judge Butter, in the same case, again remarks, “there is no question more perplexed, than what objection shall go to the competency and what to the credibility of the witness.” And it was not until the case of Jordaine and Lashbrooke, that the law became finally settled; and I am glad to find that the experience of thirty years has taught the judges of England and this state, to think alike on so important a question of evidence.
We ought not to consider the cases of Walton and Shelly, and Bent and Baker as settling the law, when we see the judges labouring under such difficulties as to declare, that they will confine themselves to the particular cases under consideration, without laying down any general rule on the subject.
But when we find that a rule has been settled, which is found to be in analogy with all the settled principles of law, and has stood the test of long experience, we ought not to give it up for one which never had more than an ephemeral existence.
The great objection, that a person shall not be permitted to develope his own shame, appears to me to be founded on mistaken principles, it is not a question whether a party shall be permitted to take advantage of his own wrong, büt whether a witness may not be required or permitted to disclose a fraud, although he may have been a party to it. How far such a circumstance may go to affect the credit of the witness is a distinct question. I am not aware of any rule of law which renders a witness incompetent, on account of his having committed a fraud; unless he has been convicted in a court of justice of perjury or some infamous crime. A witness may be competent and yet unworthy of credit *78 The objection ought, therefore, to go to his credibility and not to his competency.
King, for the motion.
Pepoon, contra.
I have not entered into a consideration of the cafes where the question has arisen in the American courts, in many of them, the subject has been very learnedly discussed: But the ablest judges have been divided in opinion upon it, andtherefore, can afford us but little aid in forming a judgment upon it. I think, however the current of opinion is running the course which we have gone,- and I have but little doubt, that except where they are too tightly trammelled, by, perhaps, 1 may say, hasty decision, of their own courts, they will ultimately come to the same conclusion.
Believing the decision to be founded on correct principles and calculated to preserve the symmetry of the law, we are opposed to granting a new trial, (.c)

.) In Martin vs. Lighlner (2 M'Cord's Reports¿ 214,) the declarations of the payee were rejected, in a suit by a bearer against the drawer, on a note made payable to the payee or bearer,'on the ground that he might have been made a witness,

c.) In England, at Pi. P. it has lately been decided, that, “ the joint acceptor of a bill of exchange is not competent to prove a sett off in an action by the holder against the drawer;” (Mainwaring vs. Mytton, 1 Starkie’s Rep. 84;) and in the case of Hardwicks vs. Blanchard, (1 Gow 113,) that “ in an action against the acceptor of a bill of exchange, accented for the accommodation of the drawer, the latter is not a competent witness to prove that the holder discounted the bill on usurious terms.” So, in Jones vs. Brooke, 4 Taunton 464, in action against the acceptor, the drawer was held incorn-petentto prove usury; because the courtsaidhe did not stand indifferently. Sir James Mansfield in delivering judgment says, “an objection was made to the witness, who was the wife of the drawer, and the objection was overruled, on. the ground that it is now the practice to receive persons whose names are on hills of exchange, as witnesses to impeach such hills. And so it is; but here the question is Sic.” and he goes on to shew that the drawer’s interest was on one side, and not, on the other, being liable to the acceptor for any losses he sustained, and was therefore interested to protect the acceptor.
In Massachusetts, the rule in Walton and Shelly prevails, so far as relates to negotiable securities. See Barber vs. Prentiss, 6 Mass. Reports 434. Jones vs. Coolidge, 7 Do. 199. Parker vs. Hanson, 7 Do. 470. Manning vs. Wheatland, 10 Do. 502. Parker vs. Lovejoy, 3 Do. 565. Warren vs. Merry, 3 Do. 27. Widgery vs. Munroe, 6 Do. 449. Churchill vs. Suter, 4 Do. 156. Storer vs. Logan, 9 Do 55.
*79 But ibis rule does not extend to deeds of conveyance. Inhab. Worcester vs. Eaton, 11 Mass. 368. Loker vs. Haynes. 11 Do. 498; for a party to a deed of land, who is not interested, is competent to prove the deed fraudulent or void, Hill vs. Payson, 3 Do. 559. But one who has undertaken to convey is incompetent to prove he had no title. Storer vs. Batson, 8 Do. 431. Nordoes the rule extend to bills of lading, Brown vs. Babcock, 3 Do. 29.
In Pennsylvania, the rule in Walton &/■ Shelly prevails, hut is confined to negotiable instruments actually negotiated in the usual course of business. Baird vs. Cochran, 4 Serg. and R. 399. Blagg vs. Phoenix Ins. Co. cited from, M. S. Rep. Pleasants vs. Pemberton, 2 Dall. 196. 1 Yeates 202. Baring vs. Shippen, 2 Binn. 165, 168. M‘Ferran vs. Powers, 1 Serg. and R. 102. Stille vs. Lynch, 2 Dall. 194. Shaw vs. Wallis, 2 Yeates 17.
And it has been held there, that bonds though assignable instruments by A. A, are not negotiable (Baring vs. Shippen, 2 Binn. 154,) and that the indorser of a note not negotiated until after the day of payment, is competent to invalidate it, by his testimony. Baird vs. Cochran, 4 Serg. and R. 295. See, also, cases forming exceptions, Blagg vs. Phœnix Ins. Co. cited above, Wolf vs. Carothers, 3 Serg. and R. 240. Peterson vs. Willing, 3 Dali. 506, Brown vs. Downing, 4 Serg. and R. 497.
In New-York, Walton and Shelly is adopted, as to negotiable papers. In Baker vs. Arnold, (1 Caines’ Rep. 269,) Judge Livingston, said “ for my part, it would give me less offence to see such a man expiating his fraud and effrontery in a pilleroy, than attesting heaven, in the sanctuary of justice, •to the truth of asseverations, which at once evince his turpitude and distroy his credit.” Judge Rent, in the same case, submitting te Walton and Shelly, still, observes, “ it has been the bent of the courts for a century past, to enlarge the rule respecting the competency of witnesses.” — “ And I could wish to see this other rule, of witnesses being incompetent, on grounds of policy, rendered equally manageable, by being reduced to limits susceptible oi equal definition and certainty To do this, we must adhere strictly to the cases which produced the rule, and exclude only the witness, who is called lo impeach his ownpaper, by showing it to have been immoral or illegal when hepul his name to it.” See also, Winter vs Saidler, 3 John. Ca. 135.3 Do. 206. 2 John. Rep. 165 But a party to a negotiable instrument, after it lias been discharged, is a competent witness to show usury in the transaction. Dunham vs. Day, 2 John C. C. 192.